Davis *v.* Ransom et al.

the court overruled said motion for a new trial, to which ruling and decision of the court the defendant, by his counsel, then and there duly excepted, and prayed an appeal therefrom, which was granted.

And forasmuch as the several matters hereinbefore stated do not otherwise appear, the defendant, by his counsel, hereby prays that this, his bill of exceptions, may be duly signed and sealed, and made a part of the record of said cause, which is done.                        JOHN M. WILSON. [SEAL.]

HOYNE, MILLER and LEWIS, for Appellant.

SHUMWAY, WAITE and TOWNE, for Appellee.

WILLIAM DAVIS, Plaintiff in Error, *v.* JONATHAN H. RANSOM *et al.*, Defendants in Error.

ERROR TO OGLE.

A chattel mortgage of a stock of goods, enumerating a part of them, which recites that the mortgagor is indebted, and cannot pay without more time ; that he shall keep possession of the goods, sell them in the usual course of trade, and out of the proceeds pay certain preferred creditors, and divide *pro rata* among others, the mortgage to become void when this should be done, which was to be within fifteen months ; the mortgagee, in certain contingencies, to take possession of these, and all after-acquired goods, to perform the same service, is fraudulent and void. Such a mortgage not coming within the purviews of the statute ; and operating to delay and hinder creditors.

THIS was an action of replevin in the detinet. The defendant pleaded non detinet ; a plea averring that property was in

Davis *v.* Ransom et al.

one Sexton, and that certain persons had recovered judgment against Sexton in the United States Court for the Northern District of Illinois, upon which execution had been issued, and that the marshal had levied upon these goods by virtue thereof, and a plea of property in Sexton and not in the plaintiffs. To these pleas there was a replication, joinder, etc., and issue to the country.

There was a trial by jury, and a finding for the plaintiffs in replevin, with five cents damages.

The cause was tried before DRURY, Judge, at May term, 1856, of the Ogle Circuit Court.

The said plaintiffs, to prove the issues on their part, produced and caused to be sworn, Edmund P. Sexton, by whom the plaintiffs proved the making, signing and delivery by the witness to the plaintiffs, of the instrument in writing, of which the following is a true copy, viz. :

WHEREAS, I, Edmund P. Sexton, of the village of Oregon, county of Ogle, and State of Illinois, am justly indebted to James Manlove, in the sum of six hundred and forty-four dollars; to J. H. Ransom & Co., about the sum of nine hundred and sixty dollars; to Bates, Fay & Co., about the sum of six hundred dollars; to Cummins, Collins & Seaman, about the sum of twenty-four hundred dollars; to Horpick & Mooney, about five hundred dollars; to Bridge & Shepherd, the sum of one hundred and eleven dollars; to Sever & Somenelick, four hundred and seven dollars; Lyman, Cook & Co., one hundred and twenty-nine dollars; Plume, Palmer & Stennett, three hundred and thirty dollars; Griffin & Titus, two hundred and ten dollars. AND WHEREAS, I am unable to pay and discharge said debts without further time, and being desirous to secure the payment of the same, THEREFORE, THIS INDENTURE WITNESSETH, That I, Edmund P. Sexton, party of the first part, and J. M. Bates and J. H. Ransom, of the city of New York, parties of the second part; that the said party of the first part, being so justly indebted to the several persons before named, in the several sums mentioned above, amounting to the sum of six thousand two hundred and ninety-seven dollars; for, and in consideration of the same, and for the purpose of securing the payment thereof, have granted, bargained, sold and mortgaged, and by these presents do grant, bargain, sell, and mortgage, unto the said J. H. Bates and J. H. Ransom, parties of the second part, all the goods, chattels and personal property, belonging to the party of the first part, and now in his possession, in the building known as Etniger's building, that part now occupied by the party of the first part, in the village of Oregon, county of Ogle, and State of Illinois; said property to include all the merchandise and stock in trade, consisting of thirty pieces of broadcloths, cassimeres and satinets, thirty pieces of ginghams, three hundred pieces of prints, thirty pieces of alpacas, twenty pieces of dress goods, twenty pieces of ribbons, fifty pieces of shirting, a quantity of sheeting, twenty pieces of cambrics, five pieces of velvets, five pieces of silks, sixty over and under coats, thirty pairs of pants, thirty vests, twelve cases of boots, one hundred pairs of shoes, fifty pairs of brogans, a quantity of groceries, a quantity of hardware, a quantity of crockery, together with all and every article of merchandise, of whatsoever kind or descrip-

tion, now of said stock: To HAVE AND TO HOLD, all and singular, the said goods, wares and merchandise, herein before granted, bargained and sold, or mentioned, or intended so to be, unto the said parties of the second part, their executors, administrators and assigns, to the only proper use and benefit of the said parties of the second part, their executors, administrators and assigns forever: *Provided, always,* And these presents are upon this express condition, that the said party of the first part, his executors or administrators, shall, and do, well and truly pay, or cause to be paid, unto the said parties of the second part, their executors, administrators or assigns, the several sums of money due to each of said firms before mentioned, with seven per cent. interest thereon, to be paid as follows, to wit: The said sum specified to be paid first, to J. G. Manlove, the said sum second to be paid, to J. H. Ransom & Co.; the said sum specified third, to Bates, Taylor & Co.; and fourth, to pay the others the other said several sums, *pro rata,* herein before mentioned, the payment of all said several sums to be made within fifteen months from this date, or sooner, if the proceeds of sale of said goods, wares and merchandise, will enable the party of the first part to do so. It is hereby provided, by and between the parties to this mortgage, that the said Edmund P. Sexton, party of the first part, shall have and retain possession of all the goods, wares and merchandise, hereby mortgaged, for the purpose of selling and disposing of the same in the usual course of trade, as heretofore followed, to sell for ready pay only, for the purpose of paying and discharging the said several debts, as before mentioned, and for no other purpose; and that the said party of the first part shall well and faithfully pay over to the parties of the second part, all the money and avails of the sales, every thirty days after the date hereof, or oftener, if he chooses to do so, for the purpose of paying said debts, as before mentioned. And it is also provided and agreed by the parties to this mortgage, that the party of the first part shall not remove said goods and merchandise from the village of Oregon, where they are now situate, without the consent of the parties of the second part, their agent or attorney. And it is also provided and agreed, between the parties to this mortgage, that if default be made in the payments aforesaid, or in case the party of the first part neglects to pay over, as herein provided, the avails of the sales of said goods and merchandise, to the said parties of the second part, their agent or attorney, as before provided; or in case the said party of the first part shall do anything, or act, whereby, in the opinion of the parties of the second part, their agent or attorney, shall consider the security in danger, then, and in that case, it shall, and may be, lawful for the said parties of the second part, their agent or attorney, or assigns, executors, or administrators, shall have the right to take possession of the said goods and merchandise hereby mortgaged, and all the goods and merchandise which may be hereafter purchased by the party of the first part, wheresoever the same may be, or can be found, and sell the same at the best price, for cash, which can be obtained, and from the sales pay and discharge the said several sums, before mentioned, which may remain unpaid or unsatisfied; and in case there shall be more than sufficient to pay the same, the remainder shall be returned to the said party of the first part, after paying all costs and charges in the premises. It is also further provided, that in case the party of the first part shall well and faithfully perform the conditions of this mortgage on his part, pay and discharge the said several debts, as before mentioned, at the times, and in the manner before specified, then these presents, and

Davis *v.* Ransom et al.

every matter and thing therein contained, and this mortgage shall be canceled and delivered up.

IN WITNESS WHEREOF, The party of the first part has hereunto set his hand and seal, this fifth day of March, in the year of our Lord one thousand eight hundred and fifty-five.

EDMUND P. SEXTON. [SEAL.]

Witness, DAVID S. PRIDE.

This mortgage acknowledged before me, by Edmund P. Sexton, this fifth day of March, 1855.

DAVID S. PRIDE, J. P. [SEAL.]

*Filed March 5th,* 1855, *at* 4 *P. M.*

Recorded in book E. of mortgages, pages 53 and 54, and examined.

R. B. LIGHT, Clerk.

The plaintiffs further proved by said witness that he resided in the town of Oregon, in Ogle county, and his business was selling goods. That witness was acquainted with the plaintiffs, and that they were merchants, residing in New York city. The instrument or mortgage was executed by witness on the day it bears date. That the witness remained in the store, and continued in possession of the goods until April 27th, 1855, when the deputy marshal took possession of them. The marshal invoiced them, locked up the store, and advertised them. The deputy marshal then put them into the custody of William Davis, the defendant in this suit. Davis remained in custody of the goods until the 14th of May, 1855, when the sheriff took them on a replevin, at the suit of the plaintiffs. The goods replevied were the same goods taken by the marshal, and the same goods named in the mortgage. That witness sold goods after the mortgage was given, and before the levy, and paid avails to the agent of the plaintiffs, amounting to six hundred and forty-four dollars. Of the above sum witness paid to Mr. Manlove six hundred dollars, as provided in said mortgage, the amount of a note taken up by witness, he having paid the same to Manlove, and the balance of the six or seven hundred dollars he paid to Mix.

The witness testified that he was justly indebted to the various parties named in the mortgage, and in the respective sums therein named.

The said witness, on cross-examination by the counsel for the defendant, testified: That the arrangement in relation to the mortgage was made by him with Mr. Smith, the agent of the plaintiffs, and also of Bates, Taylor & Co., merchants of New York, and creditors, named in the mortgage; that, at the time of the execution, he was unable to meet his notes and liabilities as they became due; he (witness) had executed a judgment

note, and Smith and he conversed about the creditors of witness and his business; that he executed the mortgage for the benefit of his creditors; that the mortgage embraced and named all his creditors, except Messrs. Cornell & Willes, and Jennings & Co., of New York, whom he owed some seven or eight hundred dollars; and except, also, a draft due Mr. Jackson, of Chicago, of some four hundred dollars; that Cummins, Collins & Seaman, the parties to whom the judgment note was given, were provided for in said mortgage; that, at the time of the execution of the mortgage, Smith and witness concluded that the mortgage would save his creditors, and that the mortgage contained a schedule of all his property and effects, except three lots of land he then had at the time of the execution of the mortgage.

Witness had traded, as a merchant, in Oregon some eleven months, and did a cash business; that he sometimes sold some goods on credit, and kept the accounts on slips of paper. At the time of the execution of the mortgage, witness stated that he might have had some thirty dollars in accounts, and also two notes, one of fifty and one of thirty dollars, which were given by a man up north, which witness did not consider worth much.

G. W. and J. A. Thompson, Van H. Higgins, and M. P. Sweet, for Plaintiff in Error.

J. Loop, H. A. Mix and W. W. Heaton, for Defendants in Error.

Skinner, J. This was an action of replevin by Ransom and Gates against Davis, to recover a stock of goods. Davis justified the taking, under an execution to him directed, as marshal of the northern district of Illinois, issued out of the circuit court of the United States for said district against Sexton, in whose possession the goods were at the time of the taking and seizure. The plaintiffs below, to prove property in them, upon the trial read in evidence, a chattel mortgage of the stock of goods executed to them by Sexton. This instrument recites that Sexton is indebted to divers persons, among whom are the plaintiffs, amounting to six thousand two hundred and ninety-seven dollars; that he is unable to pay said debts without further time, and conveys to the plaintiffs below "all the goods, chattels and personal property belonging to the party of the first part, and now in his possession in the building known as Etniger's building; that part now occupied by the party of the first part in the village of Oregon, county of Ogle, and State of Illinois, said property to include

all the merchandise and stock in trade, consisting of thirty pieces of broadcloths, cassimeres and satinets, thirty pieces of ginghams, three hundred pieces of prints, thirty pieces of alpacas, twenty pieces of dress goods, twenty pieces of ribbons, fifty pieces of shirting, a quantity of sheeting, twenty pieces of cambric, four pieces of velvet, five pieces of silks, sixty over and under coats, thirty pairs of pants, thirty vests, twelve cases of boots, one hundred pairs of shoes, fifty pairs of brogans, a quantity of groceries, a quantity of hardware, a quantity of crockery, together with all and every article of merchandise of whatever kind and description now of said stock."

The instrument provides that Sexton shall retain possession of the goods, sell the same in the usual course of trade, pay the proceeds thereof to certain preferred creditors, among whom are the plaintiffs, and apply the balance in payment of the debts of the other creditors named, *pro rata;* that he shall pay all his named creditors in fifteen months, and that thereupon the mortgage shall become void; that in case, in the opinion of the mortgagees, their security should, for any cause, become endangered, they may take possession of the stock of goods, including all goods thereafter by Sexton added thereto, and sell the same, paying out of the proceeds the debts in manner mentioned in the mortgage, and the balance to Sexton.

If this instrument is void upon its face, because it is against the provisions of the statute, or because it is fraudulent in law, as tending to delay and hinder creditors, the judgment below must be reversed, as it could not, in such case, be the foundation of a right of property in the plaintiffs; and this is the only question we deem it necessary to examine upon this record.

The statute provides, that all instruments of writing having the effect of a mortgage or lien upon chattels, shall be invalid against third persons, where the possession shall not be delivered to and remain with the mortgagee, unless made, acknowledged and recorded in pursuance of its provisions. These provisions require that the mortgage be acknowledged before a justice of the peace of the district in which the mortgagor resides, and requires the justice to enter in his docket a memorandum of his acknowledgment, containing a description of the mortgaged property; that the mortgage be recorded in the recorder's office of the county in which the mortgagor resides, and provides that thereupon the mortgage, if *bona fide*, shall be valid for not exceeding the period of two years, notwithstanding possession remain with the mortgagor, if the mortgage provide for the possession so to remain. The statute also prohibits, under a penalty, sale by the mortgagor

26

of the mortgaged property to third persons, without informing them of the mortgaged lien. Statutes of 1856, p. 136.

From these provisions it is plain that the statute contemplates the retaining of possession, by the mortgagor, of chattels capable of description and identification only, and the retaining of such possession for use or custody, and not for sale and disposition in the course of business and trade. The possession is to *remain* with the mortgagor, a sale to third persons is prohibited, the chattels set forth in the mortgage are to be entered and described in the justice's docket and the mortgage is to be recorded; thus affording public notice in the immediate neighborhood, and in a public office of the county of the mortgagor, of the lein existing against the particular chattels. This instrument does not provide for possession *remaining* with the mortgagor within the meaning of the statute, but seeks, under cover of a mortgage, to enable the mortgagor, in defiance of his creditors, to retail goods according to the course of merchants, and is against the evident policy of the statute. *Goodrich* v. *Downs,* 6 Hill R. 438; *Grover* v. *Wakeman,* 11 Wend. R. 187. In effect, the instrument is no less than an assignment, or bill of sale of a stock of goods, reserving to the assignor the absolute dominion and power of disposition for the period of fifteen months; during which time it contemplates that the assignor shall, with the goods, carry on his business of store keeping as by him "heretofore followed;" that what he should add to the stock should enure to and become a part of the assigned or mortgaged property, and that for this period the creditors of the assignor should be hindered in subjecting the property to the satisfaction of their legal demands; thus affording the assignor immunity against the claims of creditors while he is in the visible possession and dominion of the property for all purposes, with the naked undertaking, on his part, with one of his creditors, to apply the proceeds of the goods to the payment of the named debts, in the manner in the instrument provided. The law gives no sanction to such arrangements, and, however well intended *in fact,* will hold them void as against creditors, as tending to encourage and sustain frauds, and to hinder creditors in the collection of their just demands. *Ford* v. *Williams,* 3 Kernan R. 577; *Edgell* v. *Hart,* 13 Barbour's (S. C.) R. 380; *Delaware* v. *Ensign,* 21 ibid. 85; *Griswold* v. *Sheldon,* 4 Comstock's R. 580; *Hart* v. *Crane,* 7 Paige's Chy. R. 37; *Ward* v. *Trotter,* 3 Monroe R. 1; *Sheerer* v. *Loutzherhizer,* 6 Watts' R. 543; *Whallon* v. *Scott,* 10 ibid. 237.

*Judgment reversed.*