JUDGE HARDIN
deliyeked the opinion op the count.
On the first day of June, 1867, George W. Seibert purchased of William Ross the contents of a drug-store, at the intersection of Tenth and Green Streets, in the city of Louisville, at the price of three thousand dollars, payable in installments of one hundred dollars each, at consecutive intervals of one month from and after the expiration of sixty days from the date of the contract; and as security for the debt he executed to Ross a deed of mortgage of the property then in the store, and purporting also to embrace such as he might thereafter purchase, under the following description: “All the stock of drugs, paints, medicines, notions, and fancy articles of merchandise, store fixtures and store furniture that are now in and may hereafter be purchased by or for said first party, in the usual course of business, and placed■ in a two-story brick drug-store on the north-east corner of Green and Tenth Streets of the city of Louisville.”
Afterward Seibert, having become the owner of another drug-store in said city, and becoming further indebted to Ross in the sum of $2,249, executed his several notes therefor, and a mortgage to secure them similar to the first in its provisions as to the contents of the last-acquired store and property to be thereafter purchased and placed therein.
June 7, 1869, Ross sued Seibert for a foreclosure of said mortgages, and in March following he recovered a judgment, under which all the property in the two stores was sold and purchased by him.
Seibert having, between the dates of the first and second mortgages, become indebted to Wilson, Peter & Co. in several sums, amounting to about $1,331.38, they instituted this suit in equity against Seibert and Ross on the 22d of January, 1869, alleging that the mortgages were the results of a fraudulent combination between Seibert and Ross to enable the former to avoid paying for goods he might thereafter purchase *33 by placing them in the stores, and thus rendering them apparently subject to the mortgage. And on the statements of the petition, and an affidavit setting forth both that Seibert had sold, conveyed, and disposed of his property with the fraudulent intention to cheat, hinder, and delay his creditors, and that he was then about to so sell and dispose of- his property, they sued out an order of attachment, which was levied on the contents of both drug-stores, as security for their debts, on the 23d of January, 1869.
The right of the plaintiffs to recover a personal judgment against Seibert was not controverted; but so much of the petition as attacked the mortgages, or sought to subject the attached property, and the grounds of the attachment, were controverted by both Seibert and Ross.
The chancellor of the court below, in an elaborate opinion accompanying his judgment, held not only that the mortgages were inoperative as to a part of the attached property which was acquired after they were made, but that the entire conveyances were fraudulent and invalid, and were made for the purpose of hindering the creditors of Seibert in the collection of their debts; and, besides rendering a personal judgment against Seibert, the court sustained thfe attachments, and ordered a sale of the property to satisfy the plaintiffs’ debts; and from that judgment Ross and Seibert prosecute this appeal.
The first question presented — and that which seems to have elicited the most thorough investigation and careful consideration of the chancellor — is whether the mortgages to Ross embraced the subsequently acquired property of the mortgagor of the charactér mentioned in the mortgages; and whether the mortgages were a lien on such property, when acquired, as against the creditors of the mortgagor. This question, as affecting the validity of an ordinary mortgage, has not, we believe, been directly presented heretofore for the decision of this court; the cases which have been supposed to involve it' *34 (Forman, &c. v. Proctor, &c., 9 B. Mon. 124; and Phillips, &c. v. Winslow, &c., 18 B. Mon. 431) being restricted in their application respectively to property acquired by accession, as the incident or produce of that which belonged to the mortgagor and passed by the mortgage, and to mortgages made in the exercise of powers specially conferred by charter.
Tested by what seems to be the decided weight of authority, in this country and in England, the question may be easily determined when not complicated by either of the exceptional classes of cases we have mentioned, nor confounded with the doctrine of the confusion of property. The general rule is that at law a grant or mortgage of property to be acquired in futuro is void; and if it can be upheld in equity, we apprehend it is only valid as a contract to assign when the property shall be acquired, and not as an assignment of a present interest; and if enforceable in equity at all, it can only be enforced as a right under the contract, and not as a trust attached to the property. And whatever equitable rights Ross may have acquired as against Seibert by the attempt to mortgage property afterward to be acquired, it is obvious that, restricted as are the rights of mortgagors under our statutes of conveyance and registration, Ross derived by the mortgages no available right to the subsequently acquired property as against the creditors of Seibert. These views are sustained and sufficiently illustrated by the following authorities: 2 Hilliard on Mortgages, chap. 43; 1 Parsons on Contracts, p. 570; Story’s Equity Jur., sec. 1040c; Otis v. Sill, 8 Barbour, 102; Jones v. Richardson, 11 Met. (Mass.) 481.
But while we concur in the views of the chancellor to the extent of holding the mortgages inoperative and void as to the after-acquired property, we do not admit the conclusions either that they were fraudulent per se and void in toto, or that from any proof in the cause the attachment should have been sustained. There is no sufficient evidence that the claims of Ross were unjust, *35 or that he accepted the mortgages for any other purpose than to secure his debts. If they were fraudulent in any sense, they were not actually but constructively and legally so only; and the doctrine is well settled that in a court of equity a deed not fraudulent in fact, but obtained as a security under inequitable circumstances, or which is constructively fraudulent, may nevertheless be upheld to some extent, although vacated so far as illegal or without consideration. (Short v. Tinsley, &c., 1 Met. Ky. 397; Boyd, &c. v. Dunlap, &c., 1 Johns. Chy. Rep. 478.) Although the attempt to make the mortgages embrace subsequently acquired property, though ineffectual, may have been prejudicial to the rights of creditors as presenting an apparent obstacle to the enforcement of their legal remedies, no sufficient-reason is perceived for permitting that fact alone to invalidate the entire mortgages. Nor is there in this transaction alone such evidence of positive or meditated fraud as should, in our opinion, have sustained either of the grounds of the attachment according to the requirements of section 221 of the Civil Code of Practice.
But as it appears that after the mortgages were made Seibert was permitted by Ross to retain the possession, and sell and replenish the stock in his hands, in the ordinary course of business, without accounting to the mortgagee, it is insisted for the appellees that his claim under the mortgage was fraudulent and void, as operating to hinder and delay the creditors of the mortgagor; and we are referred to several decisions in other states as sustaining this position, and especially to the able opinion of Judge Denio, of the New York Court of Appeals, in Edgill v. Hart, 5 Selden, 213; and that of Justice Skinner, in Davis v. Ransom, 18 Ill. 396; and that of Chief Justice Parker, in Ranlett v. Blodgett, 17 New Hamp. 298. If these cases were not in some respects in conflict with the current of adjudication respecting chattel mortgages in this state, neither of them is exactly analogous with this case; the first case *36 involving the validity of a contract purporting to empower a mortgagee to buy and sell goods, under cover of the mortgage, to the exclusion of his creditors; and the second, a question arising under a statute of Illinois restricting the right of a mortgagor of chattels to retain the possession of them under particular circumstances; and the last case involving questions concerning the conversion and substitution of mortgaged property by the mortgagor.
In this state it is well settled, by repeated decisions of this court, that the rule that absolute sales of personal property not accompanied by possession are fraudulent per se does not embrace mortgages and deeds of trust merely creating an incumbrance on property to secure the payment of debts. (Vernon v. Morton & Smith, &c., 8 Dana, 247; Lyons v. Field, 17 B. Mon. 543.) And although Boss’s acquiescence in the sales of the mortgaged property and the misappropriation of its proceeds was a badge of fraud which, under circumstances not fully appearing in this record, might have operated to postpone his claim to that of the plaintiffs in the disposition of the proceeds of the property acquired after the mortgages were made, we do not perceive in it any such evidence, of meditated fraud on the part of Seibert as was requisite to establish the allegation of a sale of his property with the fraudulent intention of hindering and delaying his creditors.
In any aspect of the case, it seems to us that the attachment was erroneously sustained, and the judgment to that extent will therefore be reversed. But the court deems it proper on the return of the cause to permit further litigation as to the respective and relative rights of the appellees and Boss to subject or appropriate to their debts the proceeds of the.property, to which Boss acquired no right under either of the mortgages.
As the personal judgment against Seibert must be affirmed, a question of importance as involving the rights of the appellees to damages arises, as the effect of the execution by mistake, in *37 the court below, of an appeal-bond to supersede that judgment, but for which the chancellor within three days afterward permitted the appellants to substitute another bond for superseding only the judgment sustaining the attachment and subjecting the attached property. In this we think the court did not transcend its authority/and moreover it does not appear that any right of the appellees was prejudiced by the execution of the first bond.
Wherefore the personal judgment against Seibert is affirmed, but without damages; and the residue of the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.