## H. C. PINDELL v. A. O. BROWN.

**Bills and Notes—Purchaser of Mortgage Notes.**

One who purchased mortgage notes did not acquire a greater equity therein than the vendor had.

**Mortgages—Application of Proceeds of Mortgaged Property.**

Where one executes a mortgage securing the mortgagee as surety, also a creditor of the mortgagor, the mortgagee on sale of the property must apply the proceeds to the payment of the debt on which the mortgagor is surety, and then apply the balance, if any, to individual debts of the mortgagor.

**Mortgages—Waiver of Prior Lien.**

Where a party takes a mortgage on land for the sole purpose of indemnifying himself as surety, he does not thereby waive his right to the enforcement of a prior lien on the land previous to the taking of the mortgage, for a different liability.

**Chattel Mortgages—On Stock of Goods.**

A mortgage on a stock of goods is inoperative as to property acquired and added to the stock after the execution of the mortgage.

APPEAL FROM LOUISVILLE CHANCERY COURT.

January 12, 1873.

OPINION BY JUDGE PRYOR:

Under the agreement between the parties constituting the firm of J. M. Cross & Co., the receiver, Pindell, must recover on the notes executed to him upon the sale of the partnership effects, as much as may be necessary to pay the firm debts, the cost of settling the partnership and also what may be required to pay the co-partners of Cross the sums, if any, they may be entitled to upon a final settlement. The purchase by Brannin of the notes belonging to Tinker under the sale made by the trustees of the latter, substituted Brannin to the rights of Tinker, and in determining the legal questions involved, Brannin's equitable rights are only such as Tinker would be entitled to if he still owned the notes.

In the month of May, 1868, or shortly before, Pindell, as the receiver of John Cross & Co., sold all the goods of the firm, and John Cross became the purchaser. He executed his notes to Pindell for the purchase price, amounting to over a thousand dollars, with Tinker as his surety. Cross, in order to indemnify Tinker, on the 1st of May, 1868, executed to the latter a mortgage on the stock of goods purchased by him of Pindell and also on any future acquired goods that might be purchased and placed by him in the store. The mortgage also included certain real estate in the city of Louisville, and was executed not only to secure Tinker in his liability as surety to Pindell, but also to secure him in the payment of certain notes owing him by Cross—one for $3,500 due the 1st of May, 1868; one for $3,162.62 dated the 25th of October, 1867. Cross, having purchased the firm property with a view of continuing the business, Tinker, in order to protect himself more fully in his liability as surety, required Cross by the terms of the mortgage to apply the proceeds of the sales of his goods as fast as made, to the payments of the notes due Pindell, and was to deposit the amount of sales thus made in the banking house of Tinker, etc., in order that the money might be so applied. The firm of Tinker & Co., prior to the bankruptcy of Tinker, had received seven hundred and ten dollars on deposit from Cross, and Brannin, after his purchase of the notes received various sums of money from Cross,

the proceeds of the sale of the goods, etc., in the store, whether from the goods in the house at the time of the mortgage or afterwards, does not appear, nor do we deem it material to ascertain this fact, so far as the equities of the appellant Pindell and Brannin are concerned. Brannin is asserting his right to the notes evidenced by the mortgage of 1868 and all the equities pertaining to them by reason of that mortgage and by his purchase did not acquire any greater equity than Tinker himself had. Tinker was liable for the notes due Pindell and we know of no rule of law or equity by which Tinker could apply the proceeds of the sale of the property under the mortgage of May, 1868, to payments of his own debts mentioned therein, and avoid the payment of the debts for which he was liable as surety and for the payment of which the very same mortgage was executed to secure. He must first pay the two debts included in the mortgage, for which he is liable; and the balance, if any, will be applied to his own debts. He must also account for the moneys deposited with him by Cross under the provisions of the mortgage for the payment of the Pindell notes, and will not be allowed to say in the court of equity as between himself and Pindell that he has applied the money thus deposited to the payment of some other debt. Brannin, the purchaser, must occupy the same position toward Pindell that Tinker did. His purchase neither diminished nor enlarged the equities of the parties connected with the mortgage. He holds the notes subject to all the equities by which Tinker was bound. He had notice of the manner in which Tinker held the notes and the terms of the mortgage given to secure them, and we perceive no error in the judgment of the court below requiring Brannin to account for the moneys paid him by Cross. We can not, however, concur with counsel for Pindell that Tinker by reason of the execution of the mortgage executed in May, 1868, abandoned his lien on the real estate described in the mortgage of 1868. It seems that Cross, in addition to the debts owing Tinker and described in the mortgage of 1868, was also indebted to him by note in the sum of $7,000 and to secure which the mortgage of 1867 was executed. We have already adjudged that the proceeds of the mortgage given to Tinker to secure debts for which he was bound as surety, and also his undivided debts must first be applied to the payment of the debts for which he is liable as surety, but we can not adjudge upon any principle of law or equity that the se-

curity of taking a mortgage for the sole purpose of indemnifying himself waives his right to the enforcement of a prior lien existing on the firm previous to the taking of the mortgage and for a different liability on the payment of other debts than that mentioned in the mortgage. The $7,000 note due Tinker, and to secure which the mortgage of 1867 was executed, is not secured by the mortgage of May, 1868, and counsel for appellant in the brief filed, must quote from recollection the contents of the mortgage of 1868, as the view therein taken and the quotations made are not sustained by the language of that instrument. The mortgage of 1868 recites the debts for which Tinker is liable as surety and also the two notes due Tinker by Cross for upwards of three thousand dollars each, and by its terms conveys the property mentioned to secure the payment thereof. The seven-thousand-dollar note for the payment of which the mortgage of 1867 was given to secure, is not alluded to in the mortgage of 1868 until after all the covenants and conditions are recited, and only then for the purpose, as we suppose, of showing that the surety for its payment was still retained. The clause is as follows: "And shall well and truly pay to the second party the debts due him, including the debt of $7,000 executed by mortgage dated 15th of April, 1867, and recorded in deed book No. 131, page 585, Jefferson County Court, then this conveyance shall be null and void." This clause is the only reference made to the note for $7,000, and if intended to be secured by the last mortgage it would have been described and set forth with the other notes as a part consideration for the execution of that instrument. The language used in regard to this note in the mortgage of 1868, instead of evidencing an abandonment of the lien created by the mortgage of 1867, shows an intention not to surrender any lien acquired by it, and we therefore concur with the chancellor in the opinion that Brannin has a prior lien for the $7,000 note upon the real estate therein mentioned.

The appellant, Amelia Codun, after the mortgage executed to Tinker in 1868, by Cross, upon the goods so purchased by Cross from Pindell, being a creditor of Cross, obtained a judgment against him upon which an execution was issued and levied by the sheriff of Jefferson County upon the equity of redemption of Cross in the goods mortgaged. It seems that under the agreement with Tinker, Cross, by the terms of the mortgage, continued his business in

20

selling his goods and merchandise and in replenishing his stock by making additional purchases. Then appellants insist that the mortgage to Tinker is a nullity so far as he attempts by that instrument to acquire a lien for the goods purchased by Cross after the execution of that instrument, and that the after-acquired goods were liable to be subjected to the payment of their debts. They were about to proceed to sell the goods or the interest of Cross therein under their execution, and whilst their execution was in full force and in the hands of the sheriff, Pindell, the receiver, by an amended petition, obtained an injunction staying all sales of the property until the rights of the parties could be determined by the chancellor. The property was afterwards sold by a commissioner under an order of the chancellor, and it appears from the proof that $900 of the proceeds of the sale was from goods purchased by Cross after the execution of the mortgage to Tinker. The court in the case of *Ross v. Wilson, Peter & Co.,* reported in 7 Bush 33, adjudged that a mortgage was inoperative and void as to after-acquired property, and after a careful perusal of the able argument of counsel for Pindell upon this point, we are still constrained to adhere to the principles announced in that case, sustained as it is by the weight of authority in this country and in England and by nearly all the elementary writers on the subject. Tinker permitted Cross to promote his business by the express terms of the mortgage, and although the goods afterward purchased were so mingled with the old goods, upon which the mortgage was properly executed, as not to distinguish the one from the other, still this confusion and mingling of the stock was the fault of Tinker, the mortgagee, and if any of the parties are to suffer, the party causing the trouble should bear the loss. (*Weil & Brother v. Silverstone,* 6 Bush 703.) Pindell is asserting his right to the mortgaged property by reason of its execution to Tinker, and as he is claiming alone under Tinker upon the issue made between himself and Amelia Cochran, etc., his equity is no greater than that of Tinker; if Tinker had no lien on the after-acquired property by reason of the mortgage, Pindell can have none. The execution of the appellants, Amelia Cochran, etc., whether properly levied or not, was a lien on the after-acquired goods. This lien they could not enforce by right of the injunction in this case and the chancellor, in determining the equities of the parties, should have

allowed the appellants, Amelia Cochran, etc., the sum of $900, the proceeds of the sale of the goods made by the commissioner and purchased by Cross after the execution of the mortgage. The only question of doubt is as to the extent of the appellants' recovery out of the proceeds of the goods as against Tinker and those claiming under him by reason of the mingling of the after-acquired goods with those on hand when the mortgage was executed. We are of the opinion, looking to all the equities of the case, that Amelia Cochran should only recover the amount for which the after-acquired property was sold. We perceive no error in the settlement of the accounts of the firm against Cross to the prejudice of any of the parties.

The judgments in the appeal of Pindell and the cross-appeal of Brannin, is affirmed and reversed on the appeal of Amelia Cochran, etc., for further proceedings consistent with this opinion.

*Pindell, Barrett & Roberts, for appellants.*

*Thompson, for appellees.*